**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TAISHA-MONET SMELLIE,           *

      Plaintiff,              *

   v.                      *         Civil Action No. 8:23-cv-02121-PX

MARRIOTT INTERNATIONAL, INC., *et al.*,  *

      Defendants.           *
                                 ***

<u>**MEMORANDUM OPINION**</u>

Pending in this employment discrimination lawsuit is Defendants Marriott International, Inc., Marriott International Administrative Services, Inc., and Starwood Hotels & Resorts Worldwide, LLC's (hereinafter "Marriot") motion to transfer venue.  ECF No. 15.  The matter is fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the motion is GRANTED.

## I.      Background

Plaintiff Taisha-Monet Smellie is an African American woman who resides in Broward County, Florida.  ECF No. 1 ¶¶ 1, 5.  Marriott is in international hotel chain with its principal offices in Bethesda, Maryland.  *Id.* ¶ 2.  In 2018, Smellie began working for Marriott at its "W Hotel" property in Fort Lauderdale, Florida.  *Id.* ¶ 6.  About a year later, Smellie became the Front Desk Supervisor for the "W Austin" in Austin, Texas.  *Id.* ¶ 7.  While Smellie worked for Marriott, she received favorable feedback from colleagues and hotel guests about her performance.  *Id.* ¶ 8.

On July 23, 2019, Smellie and her mother stayed at the Residence Inn in Plantation, Florida using Smellie's employee discount.[1]  *Id.* ¶ 14.  During their stay, Smellie and a front desk

---

[1] Marriott owns Residence Inns.  ECF No. 1 ¶ 13.

employee exchanged heated words regarding a takeout food order that had been mistakenly delivered to the wrong room. *Id.* ¶¶ 14–15. Hotel management became involved. *Id.* ¶ 16. Ultimately, hotel management told Smellie's mother that she was no longer welcome on hotel property. *Id.* ¶¶ 17, 20. Smellie and her mother were locked out of their room, prompting Smellie to call the police who prepared a report of the incident. *Id.* ¶¶ 20–21.

Thereafter, Smellie took medical leave from her job between July 24 until July 27, 2019, and returned to the W Austin on the 28th. *Id.* ¶¶ 24–25. On the day of her return, Smellie was escorted to the human resources office and pressed to admit in writing that she had threatened to kick down the door of another hotel guest. *Id.* ¶¶ 26–27. Smellie refused, and so she was suspended for three days. *Id.* ¶ 28. That same day, Smellie also requested to take intermittent Family and Medical Leave Act ("FMLA") leave which was denied. *Id.* ¶ 31. Smellie next reported to human resources that she believed she had been unfairly treated on account of her race, and that the denial of her FMLA leave was retaliatory. *Id.* ¶¶ 29–31, 34.

On August 5, 2019, Marriott fired Smellie. *Id.* ¶ 35. Marriott's stated grounds for her termination was that Smellie had threatened to kick down a guest's door, although later Marriott reported that it had terminated Smellie for a longer pattern of nonspecific "inappropriate behavior." *Id.* ¶¶ 36, 38–39. On August 4, 2023, Smellie sued Marriott for race discrimination in violation of 42 U.S.C. § 1981, arising from her abrupt termination and retaliation for having complained about race discrimination. *Id.* ¶¶ 45–47.

Marriott now moves to transfer this case to the United States District Court for the Western District of Texas, arguing that the transferee court provides a more convenient forum for the witnesses, and because documentary evidence is located in Marriott's Texas office. ECF No. 15-1 at 7–11. For the following reasons, the Court agrees with Marriott and will grant the

motion.

## II.    Standard of Review

28 U.S.C. § 1404(a) governs transfer motions and provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  To prevail, the defendant "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."  *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 680–81 (D. Md. 2010) (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation marks and citations omitted)).  Mere conclusory allegations of hardship will not suffice.  Rather, the defendant must adduce evidence which demonstrates "the hardships [it] would suffer if the case were heard in the plaintiff's chosen forum."  *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel*, 198 F. Supp. 2d at 712).

As a threshold matter, the Court must first determine whether the action could have been brought in the requested transferee district.  *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009) (citation omitted).  If yes, the Court next must accord proper weight to the plaintiff's choice of venue, but also balance that consideration alongside such factors as witness convenience and access, convenience of the parties, and choosing the forum that best serves the interest of justice.  *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (citation omitted).  Ultimately, the Court retains broad discretion when deciding the propriety of transfer, *id.*, undertaking "an individualized, case-by-case consideration of convenience and

fairness." *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017)

(quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted)).

## III.    Analysis

The Court first turns to whether this action could have properly been brought in the

Western District of Texas.  Venue is proper in "a judicial district in which any defendant resides,

if all defendants are residents of the State in which the district is located."  28 U.S.C.

§ 1391(b)(1).  A defendant corporation is "deemed to reside . . . in any judicial district in which

such defendant is subject to the court's personal jurisdiction with respect to the civil action in

question."  ECF No. 15-1 at 6 (quoting 28 U.S.C. § 1391(c)(2)).  Marriott is registered and

conducts business in Texas.  *Id.* at 5; *see* Tex. Civ. Prac. & Rem. Code §§ 17.041, 17.042.

Accordingly, the transferee court has personal jurisdiction over Marriott, and so Marriott

"resides" in Texas.  ECF No 15-1 at 5–6.[2]  Thus, this action could have been brought in the

transferee district.

The Court next turns to the remaining factors governing transfer.

### A.    Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is accorded special consideration.  *CareFirst,*

*Inc. v. Taylor*, 235 F. Supp. 3d 724, 733 (D. Md. 2017) (quoting *Collins v. Straight, Inc.*, 748

F.2d 916, 921 (4th Cir. 1984) (citation omitted)).  However, where the chosen venue is neither

the plaintiff's "home," nor is it where the "events giving rise to the litigation" occurred, the

significance of plaintiff's choice understandably is diminished.  *D2L Ltd.*, 671 F. Supp. 2d at 779

---

[2] Marriott also asserts that venue is proper because the Western District of Texas is "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2); *see* ECF No. 15-1 at 6.  Smellie contests this point.  ECF No. 18 at 11–12.  But because venue is proper *either* where the defendant resides in the transferee district *or* where the relevant events took place, the Court need not address Smellie's argument.  *See* 28 U.S.C. § 1391(b).

(quoting *Tse v. Apple Comput., Inc.*, No. L-05-2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006)).

Marriott contends, and Smellie does not dispute, that the events giving rise to her termination did not take place in Maryland.  ECF No. 15-1 at 7.  Nor does Smellie live in, or have any ties to, Maryland.  *Id.*  Conversely, the alleged discrimination and retaliation took place while Smellie worked at the W Austin and involved several hotel employees who worked at the property.  ECF No. 1 ¶¶ 25–35.  Based on this, the Court accords Smellie's choice of forum limited deference.

### B.    Convenience of Witnesses

The next consideration, witness convenience, is "[p]erhaps the most important factor" in deciding the propriety of transfer.  *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000).  To prevail, the movant must demonstrate that witness convenience supports transfer.  *Int'l Masonry Training & Educ. Found. v. Hawaii Masons' Training Fund*, No. 3320-PX, 2019 WL 1492684, at *1 (D. Md. Apr. 3, 2019); *see Brown v. Stallworth*, 235 F. Supp. 2d 453, 457 (D. Md. 2002) ("Counsel's assertions of hardship, without affidavits from the parties and/or witnesses who are purportedly going to be inconvenienced, is insufficient to convince the court that venue should be changed.") (quoting *Helsel,* 198 F. Supp. 2d at 712) (citation omitted)).  Of course, where no witnesses reside in the chosen forum, this showing need not be as robust.  *Tse*, 2006 WL 2583608, at *3–5 (finding that witness convenience weighed in favor of transfer because even though defendant did not provide "detailed information about its witnesses," defendant's witnesses resided in transferee state and no witnesses resided in transferor state); *see also MedServ Int'l, Inc. v. Rooney*, No. AW-05-3173, 2006 WL 8457082, at *3 (D. Md. Feb. 7, 2006) (". . . the requirement that a party seeking transfer on the basis of

witness convenience identify the witnesses expected to testify at trial and state the nature of their intended testimony is not always rigidly enforced."). So long as Marriott demonstrates that most fact witnesses reside in or near Texas, this factor will tip in its favor. *See* Tse, 2006 WL 2583608, at *3–5.

Marriott has demonstrated that no witness can call Maryland a convenient forum, but many are at home in Texas. ECF No. 15-1 at 7. Two witnesses are currently employed at the W Austin, so the transferee district will be far more convenient for them. ECF No. 21-2; *see Cronos Containers*, 121 F. Supp. 2d at 466 (stating that "transfer clearly serves the convenience" of witnesses because testimony will be presented by persons located in transferee district and who have no connection to Maryland). For three other witnesses, their last known addresses are either in Texas, or nearer to Texas than Maryland. ECF No. 21-2. Smellie, in response, merely speculates that because Marriott is headquartered in Maryland, chances are that *some* witnesses may hail from this district. ECF No. 18 at 13. But speculation is not proof, and Smellie has not named one witness who works or lives in Maryland. *See id.*; *Cronos Containers*, 121 F. Supp. 2d at 466. Thus, witness convenience points in favor of transfer.

###   C.      Convenience of the Parties

As to the convenience of the parties, Marriott convinces the Court that the factor weighs in its favor for similar reasons. Marriott particularly highlights that many witnesses and documents are located in Texas, not Maryland. ECF No. 15-1 at 7–8. By contrast, little, if any, relevant evidence is situated in this district. Thus, Marriott rightly points out that forcing Marriott to defend itself in Maryland cannot, in fairness, be justified.

In response, Smellie attempts to convince the Court that Maryland remains a more convenient forum for her, but with little to back this contention up. ECF No. 18 at 9; ECF No.

18-1 at 5.   Smellie asserts that she cannot afford to pay for her Maryland-based lawyer to travel and stay in the Western District of Texas; yet she ignores that she will incur near identical expenses to have her Texas-based lawyer try the case in Maryland.   *See* ECF No. 21 at 3.   This is especially odd given that her Texas lawyer appears to play an active role in her representation. *Id.*; ECF No. 13 (pro hac vice motion granted for Mr. Walsh); ECF Nos. 1, 18 (pleadings signed by Mssrs. Ray and Walsh).   Thus, this added "expense" argument does not square with the record.   *Cf. Helsel*, 198 F. Supp. 2d. at 712 (considering plaintiff's assertion that litigation costs in transferee district "would be a severe financial burden" when deciding that balance of factors cuts against transferring venue).

   Nor can Smellie persuasively contend that because Maryland is "closer" to her home in Florida than Texas, she is materially prejudiced by transfer.   Both courthouses are over 1,000 miles away from Smellie's residence.   *See* ECF No. 18 at 9 (stating that Smellie's home in Florida is 15 hours or 1,050 from this district and 19 hours or 1,382 miles from the Western District of Texas).   Trial in either place will, therefore, visit a similar burden on her regardless. *See id.*   This factor, too, cuts in favor of transfer.

### D.    Interests of Justice

   Finally, the Court turns to the amorphous "interest of justice" factor, which encompasses all relevant considerations apart from witness and party convenience.   *See Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005) (citation omitted); *D2L Ltd.*, 671 F. Supp. 2d at 783 (citation omitted) (same).   Relevant considerations include "relative ease of access to different sources of proof"; "availability of compulsory process for attendance of unwilling witnesses"; local interests in favor of resolving issues where they occurred; and the

courts' respective docket congestion.  *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D.

Md. 2014); *Brown*, 235 F. Supp. 2d at 456.

On each of these considerations, Marriott makes the better case.  First, Marriott points out

that many of the witnesses are beyond this Court's compulsory process, but they would be within

the subpoena power of the transferee court.  ECF No 15-1 at 10; ECF No. 21 at 5; *see* Fed. R.

Civ. P. 45(c)(1)(A) (limiting subpoena power for trial witness to 100 miles).  Marriott separately

highlights that because the "vast majority" of the alleged conduct occurred in Texas, the

transferee district maintains a comparatively keener interest in adjudicating the dispute.  ECF

No. 15-1 at 9.  Lastly, Marriott has adduced some evidence that, on average, cases are tried more

quickly in the transferee district than in this district.  *Id.* at 10 ("Federal Court Management

Statistics indicate that as of March 31, 2023, the median amount of time from filing to trial in

civil cases in this Court was 38.8 months, whereas in the U.S. District Court for the Western

District of Texas . . . was 28.2 months.").

Smellie, in response, does not meaningfully contest that trial witnesses can be compelled

in the transferee district but not in this forum.  Rather, she argues that compulsory process does

not matter because the Marriott employees will likely appear voluntarily as part of their

employment.  ECF No. 18 at 12.  Smellie also stresses that she is willing to conduct remote or

virtual depositions if the case remains here.  *Id.* at 10; ECF No. 18-1 at 5.  Smellie's response,

however, does little to undercut Marriott's legitimate concerns regarding compulsory process.

Smellie also pushes back on the notion that the case will be tried more quickly in the

transferee forum.  ECF No. 18 at 15.  But in the end, docket congestion should "receive minor

consideration and . . . cannot be the primary reason for retaining venue."  *Weathersby-Bell v.*

*Washington Metro. Area Transit Auth.*, No. GJH-19-3474, 2020 WL 4501485, at *5 (D. Md.

Aug. 4, 2020).

On balance, the Court is persuaded that the interests of justice tilt in favor of transfer.  It is beyond dispute that for the most part, the transferee district retains the power to compel anticipated witnesses to testify where this Court has no similar authority.  *See* Fed. R. Civ. P. 45(c)(1).  It is also beyond dispute that much of the alleged wrongful conduct took place in Texas, and so the transferee district retains a greater interest in resolving the matter than does this forum.  *See* ECF No. 15-1 at 9; ECF No. 1 ¶¶ 25–35.  Thus, when considering this and all other factors, the Court concludes that transfer is warranted.

The motion is granted.  A separate Order follows.


November 13, 2023 _____
Date

/s/ _____
Paula Xinis
United States District Judge